## APPEAL OF FLINT RIVER BRICK CO.

Docket No. 746.  Submitted April 30, 1925.  Decided June 11, 1925.

1. When taxpayer computes depreciation for 1919 and 1920 on the basis of its then book value of plant and equipment acquired prior to March 1, 1913, and such basis is adopted by the Commissioner, it may not set up a claim to a computation based upon the March 1, 1913, value of such assets, where the only evidence offered by it was an appraisal made in 1913 which substantiated the correctness of the book value at that time and the books were not changed as a result of such appraisal.

2. Taxpayer corporation acquired for stock assets of two competing concerns, which were carried on its plant account at a specified valuation, and utilized a portion of such assets in the construction of a new plant. In the absence of evidence that the book value of plant account did not include the assets used in the new construction, *held*, that taxpayer's book value of assets for depreciation and invested capital purposes was properly reduced to the extent of the value of the assets used in constructing the new plant.

3. Additional compensation, paid to an officer of a corporation in 1919, for services rendered in prior years, upon the understanding that additional compensation for those years would be paid if and when the business proved successful, is properly deductible from gross income of the corporation for 1919.

4. Salaries paid in 1920 to officers and stockholders of a corporation, who rendered it valuable services during years prior to 1920 without compensation, and also during that year, *held*, deductible as ordinary and necessary expenses and not a distribution of profits to stockholders.

*Harry Friedman, Esq.*, for the taxpayer.
*Arthur H. Fast, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

The taxpayer appeals from determinations of deficiencies in income and profits taxes for 1919 and 1920 in the respective amounts of $3,915.94 and $5,568.55—total $9,484.49.

FINDINGS OF FACT.

1. The taxpayer is a Georgia corporation incorporated in 1910, with an authorized capital stock of $50,000, which was issued for the assets of two competing brick manufacturing plants known as Albany Brick Co. and Cruger & Pace. At the time of organization a new plant was built to take the place of the two competing plants, and much of the machinery, equipment, and assets of the old plants was utilized in the building of the new one. Among the assets so utilized were bricks from the yards of the old plants of a value of $4,360. As of June 1, 1910, three individuals representing, respectively, the Albany Brick Co., Cruger & Pace, and the taxpayer, made an appraisal of the then completed plant and entered in an inventory book the estimated value of the different items of plant and equipment. The total of the inventory was $82,899.28, included in which amount is $11,245.60, the estimated value of clay lands acquired.

2. As of May 30, 1913, the plant of the Flint River Brick Co. was appraised by the American Appraisal Co. This company found that the sound value of buildings, equipment, railroad equipment, and dwellings was $91,293.86. These values were based on the cost of reproduction new " according to the present market conditions for materials and labor, less deductions for accrued depreciation due to wear, tear, etc., resulting from age and service and are in accordance with the actual physical condition of the property at the date of the appraisal."

In its income-tax returns for 1919 and 1920, the taxpayer deducted from gross income as depreciation $5,449.28 and $4,999.28, respectively, and for depletion $600 for each year. The depreciation claimed for 1920 was approximately the same in amount as that claimed for each of the years 1916 and 1917 and represented approximately 5 per cent of the book value of the plant and equipment, $99,985.59.

3. In the audit of the taxpayer's returns for 1919 and 1920, the Commissioner has disallowed $947.38 of the depreciation claimed for 1919 and $295.43 of that claimed for 1920. He has also disallowed the deduction from gross income of 1919 of $7,000 of the salary paid to Paul J. Brown, general manager of the company, during that year, and from the gross income of 1920 the deduction

of a salary of $5,000 paid to the vice president and of a like amount paid to the chairman of the board of directors.

4. In its income-tax return for 1919 the taxpayer claimed invested capital of $65,535.76. This was admittedly in error to the extent of $10,000, which represented treasury stock. In the deficiency letter from which this appeal is taken the adjusted invested capital is shown to be $40,000.

5. Prior to 1919, Paul J. Brown was paid a salary of $1,500 per year. At the time that Brown assumed the position of general manager of the company he was promised by the officers of the company that when it made sufficient headway to pay off at least a large part of the then indebtedness he would receive more compensation. The additional amount of $7,000 paid to him in 1919 represented $3,500 additional compensation for 1917 and a like amount of additional compensation for 1918.

Neither the president nor the chairman of the board of directors of the company was paid any salary prior to 1920. The president financed the corporation through his banks and by personal indorsements of the taxpayer's notes. He was instrumental in securing large orders for brick for enterprises in which he was interested. The chairman of the board of directors was also a man of large business affairs and was instrumental in "helping to secure orders." He also jointly indorsed with the president all notes of the company for the purpose of borrowing money.

6. The stockholders of the taxpayer in 1919 and 1920 were as follows:

|                        | Shares |
|------------------------|--------|
| P. J. Brown            | 50     |
| C. M. Shackleford      | 169    |
| S. B. Brown            | 181    |
| Total                  | 400    |

DECISION.

The deficiencies should be determined in accordance with the following opinion. Final determination of the Board will be settled on consent or on 10 days' notice, in accordance with Rule 50.

OPINION.

Smith: This appeal comes before the Board on the following assignments of error:

1. Failure to compute depreciation on the basis of the March 1, 1913, value of the plant.

2. Reduction of the book value of the plant for the purpose of depreciation by the amount of $4,360, representing the value of "bricks from old yards."

3. Reduction of the book value of assets for the purpose of invested capital by the following items:

(a) Bricks from old yards.

(b) Alleged depreciation sustained in excess of the amount charged off on the books of the taxpayer.

4. Disallowance of a deduction for salaries paid in 1919 to officers for services rendered and to retain said services.

5. Disallowance of salaries paid to officers in 1920 for services rendered in 1920.

6. Failure to compute the profits tax for the years 1919 and 1920 under the provisions of section 328 of the Revenue Act of 1918.

The only evidence which has been offered by the taxpayer to the effect that the fair value of its depreciable assets was in excess of the book value thereof is an appraisal made by the American Appraisal Co. as of date May 30, 1913, which showed a fair value of $91,293.86. The book value of the plant at January 2, 1912, was $87,479.73. The books of account do not appear to have been changed as a result of the appraisal. At most, the appraisal substantiated the correctness of the book value of the plant at the time that it was taken. The taxpayer did not claim the deduction of depreciation for the years 1919 and 1920 in amounts based upon the appraised value of the assets and we do not think that any error was made by the Commissioner in computing the depreciation upon the same basis as was used by the taxpayer.

The total plant account of the taxpayer, as shown by its books of account at December 31, 1918, was $99,985.59; the cost of depreciable assets included therein was $87,746.99, which amount is determined by deducting from the total book value the items of land, $2,238.60, and good will, $10,000. As a basis for computing depreciation for the years 1919 and 1920, the Commissioner reduced the cost of depreciable assets, as shown by its books of account at December 31, 1918 ($87,746.99), by $4,360, which represented the value of bricks from the old yards used in the construction of the new plant. This adjustment was made upon the theory that the value of the bricks from the old yards had already been included in the invested capital, since the plant account, as shown by the ledger, shows that on May 1, 1909, the assets of the Albany Brick Co. and of Cruger & Pace were turned over to the taxpayer at a value of $25,000 each, total $50,000. No evidence has been submitted to the effect that these values did not include bricks from the old yards at an estimated value of $4,360. The value of bricks from the old yards was placed upon the taxpayer's books of account in its plant account at February 28, 1910. A copy of the revenue agent's report showing the basis of his action has not been put in evidence by the taxpayer.

In the light of the evidence before us we must affirm the Commissioner's action in reducing the book value of the plant for purposes of depreciation by $4,360, representing the value of "bricks from old yards."

The third assignment of error is to the effect that the Commissioner has erroneously reduced claimed invested capital by the above mentioned amount of $4,360, representing the value of bricks from the old yards, and further that he has also reduced invested capital by alleged depreciation sustained in excess of the amount charged off on the books of the taxpayer. The reduction in invested capital of $4,360 is approved for reasons above stated. No evidence has been submitted in support of the allegation that the Commissioner has reduced invested capital by alleged depreciation in excess of that charged off on the books of account. In its brief the taxpayer states that the Commissioner has reduced the invested capital of the taxpayer by amounts of $16,045.90 and $15,548.52 for the years 1919 and 1920, respectively, "which he terms insufficient depreciation for the years prior to the taxable years." The revenue agent's report, as above indicated, has not been put in evidence and there is no proof of the allegation made by the taxpayer. The deficiency letter from which the appeal is taken shows an adjusted invested capital of only $40,000 but the reason for making the adjustment has not been shown. The claim of the taxpayer must therefore be denied for lack of proof.

In its income-tax return for 1919 the taxpayer deducted. from gross income $12,000 for compensation of officers. This salary was paid to P. J. Brown, who executed the return as president and treasurer and who claimed in the return to have been president, secretary, and treasurer. Prior to 1919, Brown had received a salary of only $1,500. The taxpayer had had only moderate success prior to the war period and any earnings of the company in excess of actual expenses had been applied to reduce outstanding indebtedness. The stockholders of the company had agreed with Brown that if the business was a success he would be paid an amount. in addition to the $1,500 which had theretofore been paid him. In 1919 he was paid $12,000. There is some evidence to the effect. that $3,500 of this amount was to represent additional compensation for 1917, and a like amount additional compensation for 1918.. The Commissioner has disallowed the deduction of $7,000 of the $12,000 paid Brown in 1919 upon the ground that this amount was not an expense for the year 1919. It was a legal deduction from the gross income of 1919. See *Appeal of C. H. Simonds Co.*, 1 B. T. A. 105.

For the year 1920 the taxpayer paid P. J. Brown a salary of $6,000; S. B. Brown, who owned 181 shares of stock, $5,000; and

C. M. Shackleford, who owned 169 shares, $5,000. These amounts were deducted from gross income in the tax return as salaries paid to these individuals. It was the first time that any salaries had been paid to S. B. Brown and Shackleford. The return represents that Shackleford was vice president and that S. B. Brown was chairman of the board of directors. These individuals had rendered services of great value to the corporation over a series of years and had received no compensation therefor. They had also rendered valuable services during the year 1920. We are of the opinion that the amounts are allowable deductions from gross income as ordinary and necessary expenses and that they are not simply a distribution of profits to the stockholders.